# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| STACY FOSTER; JAMIE KIMBALL; and JONATHAN RILEY, *on behalf of themselves and all others similarly situated*, | |
| Plaintiffs, | Civ. No. _____ |
| v. | |
| COMMONWEALTH OF MASSACHUSETTS, CHARLIE BAKER, Governor; DEBORAH B. GOLDBERG, Treasurer; JONATHAN S. WILLIAMS, Administrator of the Trial Court; EDWARD DOLAN, Commissioner of Probation; MAURA HEALEY, Attorney General; KERRY GILPIN, Massachusetts State Police Superintendent; DANIEL BENNETT, Secretary of the Executive Office of Public Safety and Security; JONATHAN BLODGETT, Essex County District Attorney; DAN CONLEY, Suffolk County District Attorney; TIMOTHY J. CRUZ, Plymouth County District Attorney; MICHAEL MORRISSEY, Norfolk County District Attorney; MICHAEL D. O'KEEFE, Cape and Islands District Attorney; THOMAS M. QUINN III, Bristol County District Attorney; and MARIAN T. RYAN, Middlesex County District Attorney, *in their official and individual capacities*, | **CLASS ACTION COMPLAINT** |
| Defendants. | |

## Introduction

1.     On April 19, 2017, due to the outrageous misconduct of former state chemist Annie Dookhan ("Dookhan") in the William A. Hinton State Laboratory Institute ("Hinton Drug Lab"), the Supreme Judicial Court vacated and dismissed with prejudice the wrongful drug convictions of more than 21,000 individuals in Massachusetts, commonly known as "Dookhan Defendants," including named Plaintiffs Stacy Foster, Jamie Kimball, and Jonathan Riley. *See Bridgeman v. District Attorney for Suffolk County*, 476 Mass. 298 (2017); Declaratory Judgment, SJ-2014-0005, *Bridgeman v. District Attorney for Suffolk County* (Apr. 19, 2017) (Gaziano, J.).

2.     Based on their now-vacated, wrongful convictions, these Dookhan Defendants—a class that includes Plaintiffs and the similarly situated individuals that they seek to represent ("Class Members")—paid court costs, probation fees, mandatory assessments, fines, restitution, license-reinstatement fees, and other moneys ("Case-Related Payments"), performed mandatory uncompensated labor or community service in lieu of required payments ("Uncompensated Labor"), and lost property that was seized from them ("Forfeited Property").

3.     Pursuant to the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution, Class Members are entitled to the refund of all Case-Related Payments, payment for all Uncompensated Labor, and return of all Forfeited Property. *See Nelson v. Colorado*, 137 S. Ct. 1249 (2017).

4.     Nevertheless, in violation of due process, Defendants Commonwealth of Massachusetts, Charlie Baker, Deborah B. Goldberg, Jonathan S. Williams, Edward

Dolan, Maura Healey, Kerry Gilpin, Daniel Bennett, Jonathan Blodgett, Dan Conley, Timothy J. Cruz, Michael Morrissey, Michael D. O'Keefe, Thomas M. Quinn III, and Marian T. Ryan, have failed to refund Case-Related Payments, to pay for Uncompensated Labor, and to return Forfeited Property to the Class Members and they have maintained policies and procedures that prevent the refund of Case-Related Payments, payment for Uncompensated Labor, and return of Forfeited Property.

5.    In short, from a financial perspective, Defendants have mistreated, and continue to mistreat, the Class Members as if they were convicted drug offenders.

6.    Thus, by this action, Class Members seek equitable relief, specifically a declaration that the ongoing failure of Defendants to refund all Case-Related Payments, pay for Uncompensated Labor, and return all Forfeited Property violates due process, and an injunction compelling the Defendants as follows:

    a.    To notify Class Members of their rights to the refund of all Case-Related Payments, payment for all Uncompensated Labor, and return of all Forfeited Property;

    b.    To implement an efficient, effective, and fair process to refund all Case-Related Payments, to pay for all Uncompensated Labor, and to return all Forfeited Property to Class Members; and

    c.    To refund all Case-Related Payments, to pay for all Uncompensated Labor, and to return all Forfeited Property to Class Members.

7.     Alternatively, Class Members seek an award of compensatory damages for the losses that they have suffered as a result of the ongoing, deliberate refusal of Defendants to refund all Case-Related Payments, pay for all Uncompensated Labor, and return all Forfeited Property that has been extracted from Class Members based on their now-vacated, wrongful convictions and that Defendants have no interest or right to withhold from Class Members.

8.     By vacating and dismissing with prejudice the wrongful convictions of the Class Members, the Supreme Judicial Court took an important, first step toward remedying the injustices from the Hinton Drug Lab scandal and vindicating the rights of Class Members. Now, this Court should take the necessary, next step by ordering Defendants to refund all money, to pay for community service performed, and to return all property that was taken from the Class Members based on their now-vacated, wrongful convictions or, alternatively, by ensuring that Class Members receive full compensation for the ongoing violations of their constitutional rights.

9.     Put simply, due process prohibits the Defendants from treating the Class Members—who are not guilty of the drug offenses at issue—as "guilty *enough*" to keep their money and lawfully owned property. *Nelson*, 137 S. Ct. at 1256 (emphasis in original).

## Jurisdiction and Venue

10.     Pursuant to 28 U.S.C. §§ 1331 and 1343, this Court has subject-matter jurisdiction over this action, which is brought under 42 U.S.C. § 1983 and asserts

violations the Due Process Clause of the Fourteenth Amendment of the U.S. Constitution. Pursuant to 28 U.S.C. § 1367, this Court also has supplemental jurisdiction over the related state-law claims.

11.     This Court has personal jurisdiction over the Parties to this action, who reside and/or perform their official duties in the District of Massachusetts.

12.     Pursuant to 28 U.S.C. §§ 1391(b)(1) and (2), venue is proper in the District of Massachusetts, because the events at issue arose and transpired in this judicial district.

## Parties

13.     Plaintiff Stacy Foster, a natural person, is 51-years old and a resident of the Hyde Park neighborhood of Boston, Massachusetts. Foster works full-time as an engineer for a transportation company. On or about November 14, 2005, Foster pleaded guilty in Suffolk Superior Court to distribution of a Class A substance. The court sentenced Foster to two years in the house of correction, which was suspended, and two years of probation. In connection with that case, the court imposed, and Foster made, various Case-Related Payments, including but not limited to monthly probation supervision fees. In addition, Foster lost his driver's license, and he had to pay fees to reinstate it. On April 19, 2017, due to Dookhan's misconduct, the Supreme Judicial Court vacated Foster's conviction and dismissed with prejudice the charges against him. As of today, however, Defendants have not refunded or returned to Foster any Case-Related Payments that he made as a result of his now-vacated, Dookhan-involved case.

14.     Plaintiff Jamie Kimball, a natural person, is 35-years old and a resident of Woburn, Massachusetts. Kimball works at a restaurant, and she is enrolled in classes at a community college. On or about February 8, 2010, Kimball admitted to sufficient facts in Lawrence District Court to be found guilty of misdemeanor conspiracy to violate the drug laws. The court entered a continuance without a finding and sentenced Kimball to two years of probation. In connection with that case, the court imposed, and Kimball made, various Case-Related Payments, including but not limited to monthly probation supervision fees. The court ordered Kimball to undergo, at her own expense, regular drug testing and counseling. In addition, at the time of her arrest on or about January 3, 2010, Kimball possessed approximately $1,800 in money orders and cash. Although Kimball explained to the police that the funds were from her legitimate employment and for her monthly rent, the police seized all the funds, which were later forfeited. On April 19, 2017, due to Dookhan's misconduct, the Supreme Judicial Court vacated Kimball's disposition and dismissed with prejudice the charges against her. As of today, however, Defendants have not refunded or returned to Kimball any Case-Related Payments that she made as a result of her now-vacated, Dookhan-involved case, and she has not recovered any Forfeited Property that was taken from her.

15.     Plaintiff Jonathan Riley, a natural person, is 35-years old and a resident of Austin, Texas. Riley, a veteran of the U.S. Marine Corps, is currently enrolled in a certificate program to earn a professional license so that he can operated his own small business in Texas. On or about March 3, 2008, when Riley was living in

Chelmsford, Massachusetts, he pleaded guilty in Lowell District Court to possession with intent to distribute a class D substance. The court sentenced Riley to one year in the house of correction, which was suspended, and two years of probation. In connection with that case, the court imposed, and Riley made, various Case-Related Payments, including but not limited to monthly probation supervision fees. In addition, Riley lost his driver's license, and he had to pay fees to reinstate it. On April 19, 2017, due to Dookhan's misconduct, the Supreme Judicial Court vacated Riley's conviction and dismissed with prejudice the charges against him. As of today, however, Defendants have not refunded or returned to Riley any of the Case-Related Payments that he made as a result of his now-vacated, Dookhan-involved case.

16.     Defendant Commonwealth of Massachusetts is the recipient of money paid and property forfeited by Class Members and is sued for declaratory and injunctive relief.

17.     Defendant Charlie Baker, Governor of the Commonwealth of Massachusetts, is presently, and was at all relevant times, a resident of the Commonwealth of Massachusetts. In his official capacity, Baker exercises authority over and has responsibility for money paid and property forfeited by Class Members, directly or indirectly, to the Commonwealth of Massachusetts, and in his individual capacity, Baker has participated in the unlawful withholding of money and property from the Class Members in violation of their due process rights, by failing to refund all Case-Related Payments, to pay for all Uncompensated Labor, and to return all Forfeited Property that the Commonwealth of Massachusetts has obtained from

Class Members as a result of their now-vacated, wrongful convictions. Defendant Baker is sued in his official capacity for declaratory and injunctive relief and in his individual capacity for compensatory damages. Defendant Baker also supervises other persons who participated in the unlawful withholding of money and property from Class Members and has established and maintains a policy and practice of not returning money and property unlawfully withheld from Class Members.

18.    Defendant Deborah B. Goldberg, Treasurer of the Commonwealth of Massachusetts, is presently, and was at all relevant times, a resident of the Commonwealth of Massachusetts. In her official capacity, Goldberg exercises authority over and has responsibility for money paid and property forfeited by Class Members, directly or indirectly, to the Commonwealth of Massachusetts, including funds deposited in the General Fund, and in her individual capacity, Goldberg has participated in the unlawful withholding of money and property from the Class Members by failing to refund all Case-Related Payments, to pay for all Uncompensated Labor, and to return all Forfeited Property that the Commonwealth of Massachusetts has obtained from them. Defendant Goldberg is sued in her official capacity for declaratory and injunctive relief and in her individual capacity for compensatory damages. Defendant Goldberg also supervises other persons who participated in the unlawful withholding of money and property from Class Members and has established and maintains a policy and practice of not returning money and property unlawfully withheld from Class Members.

19.     Defendant Jonathan S. Williams, Massachusetts Trial Court Administrator, is presently a resident of the Commonwealth of Massachusetts. In his official capacity, Williams exercises authority over and has responsibility for money paid (such as court costs and victim fees) and property forfeited by Class Members, directly or indirectly, to the Trial Court, and in his individual capacity, Williams has participated in the unlawful withholding of money and property from the Class Members by failing to refund all Case-Related Payments, to pay for all Uncompensated Labor, and to return all Forfeited Property that the Trial Court has obtained from Class Members as a result of their now-vacated, wrongful convictions. Defendant Williams is sued in his official capacity for declaratory and injunctive relief and in her individual capacity for compensatory damages. Defendant Williams also supervises other persons who participated in the unlawful withholding of money and property from Class Members and has established and maintains a policy and practice of not returning money and property unlawfully withheld from Class Members.

20.     Defendant Edward Dolan, Commissioner of Probation, is presently, and was at all relevant times, a resident of the Commonwealth of Massachusetts. In his official capacity, Dolan exercises authority over and has responsibility for money paid and property forfeited by Class Members, directly or indirectly, to the Probation Department, and in his individual capacity, Dolan has participated in the unlawful withholding of money and property from the Class Members by failing to refund all Case-Related Payments (such as probation supervision fees), to pay for all

8

Uncompensated Labor, and to return all Forfeited Property that the Probation Department has obtained from Class Members as a result of their now-vacated, wrongful convictions. Defendant Dolan is sued in his official capacity for declaratory and injunctive relief and in his individual capacity for compensatory damages. Defendant Dolan also supervises other persons who participated in the unlawful withholding of money and property from Class Members and has established and maintains a policy and practice of not returning money and property unlawfully withheld from Class Members.

21.     Defendant Maura Healey, Attorney General of the Commonwealth of Massachusetts, is presently, and was at all relevant times, a resident of the Commonwealth of Massachusetts. In her official capacity, Healey exercises authority over and has responsibility for money paid and property forfeited by Class Members, directly or indirectly, to the Attorney General's Office, and in her individual capacity, Healey has participated in the wrongful withholding of money and property from the Class Members by failing to refund all Case-Related Payments, to pay for all Uncompensated Labor, and to return all Forfeited Property that the Attorney General's Office has obtained from them. Defendant Healey is sued in her official capacity for declaratory and injunctive relief and in her individual capacity for compensatory damages. Defendant Healey also supervises other persons who participated in the unlawful withholding of money and property from Class Members and has established and maintains a policy and practice of not returning money and property unlawfully withheld from Class Members.

22.     Defendant Kerry Gilpin, Massachusetts State Police Superintendent, is presently, and was at all relevant times, a resident of the Commonwealth of Massachusetts. In her official capacity, Gilpin exercises authority over and has responsibility for money paid and property forfeited by Class Members, directly or indirectly, to the Massachusetts State Police, and in her individual capacity, Gilpin has participated in the wrongful withholding of money and property from the Class Members by failing to refund all Case-Related Payments, to pay for all Uncompensated Labor, and to return all Forfeited Property that the Massachusetts State Police has obtained from them. Defendant Gilpin is sued in her official capacity for declaratory and injunctive relief and in her individual capacity for compensatory damages. Defendant Gilpin also supervises other persons who participated in the unlawful withholding of money and property from Class Members and has established and maintains a policy and practice of not returning money and property unlawfully withheld from Class Members.

23.     Defendant Daniel Bennett, Secretary of the Executive Office of Public Safety and Security, is presently, and was at all relevant times, a resident of the Commonwealth of Massachusetts. In his official capacity, Bennett exercises authority over and has responsibility for money paid and property forfeited by Class Members, directly or indirectly, to the Executive Office of Public Safety and Security, and in his individual capacity, Bennett has participated in the wrongful withholding of money and property from the Class Members by failing to refund all Case-Related Payments, to pay for all Uncompensated Labor, and to return all Forfeited Property that the

Executive Office of Public Safety and Security has obtained from them. Defendant Bennett is sued in his official capacity for declaratory and injunctive relief and in his individual capacity for compensatory damages. Defendant Bennett also supervises other persons who participated in the unlawful withholding of money and property from Class Members and has established and maintains a policy and practice of not returning money and property unlawfully withheld from Class Members.

24.     Defendant Jonathan Blodgett, Essex County District Attorney, is presently, and was at all relevant times, a resident of the Commonwealth of Massachusetts. In his official capacity, Blodgett exercises authority over and has responsibility for money paid and property forfeited by Class Members, directly or indirectly, to the Essex District Attorney's Office, and in his individual capacity, Blodgett has participated in the wrongful withholding of money and property from the Class Members by failing to refund all Case-Related Payments, to pay for all Uncompensated Labor, and to return all Forfeited Property that the Essex District Attorney's Office has obtained from Class Members as a result of their now-vacated, wrongful convictions. Defendant Blodgett is sued in his official capacity for declaratory and injunctive relief and in his individual capacity for compensatory damages. Defendant Blodgett also supervises other persons who participated in the unlawful withholding of money and property from Class Members and has established and maintains a policy and practice of not returning money and property unlawfully withheld from Class Members.

11

25.     Defendant Dan Conley, Suffolk County District Attorney, is presently, and was at all relevant times, a resident of the Commonwealth of Massachusetts. In his official capacity, Conley exercises authority over and has responsibility for money paid and property forfeited by Class Members, directly or indirectly, to the Suffolk County District Attorney's Office, and in his individual capacity, Conley has participated in the unlawful withholding of money and property from the Class Members by failing to refund all Case-Related Payments, to pay for all Uncompensated Labor, and to return all Forfeited Property that the Suffolk County District Attorney's Office had obtained from Class Members as a result of their now-vacated, wrongful convictions. Defendant Conley is sued in his official capacity for declaratory and injunctive relief and in his individual capacity for compensatory damages. Defendant Conley also supervises other persons who participated in the unlawful withholding of money and property from Class Members and has established and maintains a policy and practice of not returning money and property unlawfully withheld from Class Members.

26.     Defendant Timothy Cruz, Plymouth County District Attorney, is presently, and was at all relevant times, a resident of the Commonwealth of Massachusetts. In his official capacity, Cruz exercises authority over and has responsibility for money paid and property forfeited by Class Members, directly or indirectly, to the Plymouth County District Attorney's Office, and in his individual capacity, Cruz has participated in the unlawful withholding of money and property from the Class Members by failing to refund all Case-Related Payments, to pay for

12

all Uncompensated Labor, and to return all Forfeited Property that the Plymouth County District Attorney's Office has obtained from Class Members as a result of their now-vacated, wrongful convictions. Defendant Cruz is sued in his official capacity for declaratory and injunctive relief and in his individual capacity for compensatory damages. Defendant Cruz also supervises other persons who participated in the unlawful withholding of money and property from Class Members and has established and maintains a policy and practice of not returning money and property unlawfully withheld from Class Members.

27.     Defendant Michael Morrissey, Norfolk District Attorney, is presently, and was at all relevant times, a resident of the Commonwealth of Massachusetts. In his official capacity, Morrissey exercises authority over and has responsibility for money paid and property forfeited by Class Members, directly or indirectly, to the Norfolk District Attorney's Office, and in his individual capacity, Morrissey has participated in the unlawful withholding of money and property from the Class Members by failing to refund all Case-Related Payments, to pay for all Uncompensated Labor, and to return all Forfeited Property that the Norfolk District Attorney's Office has obtained from Class Members as a result of their now-vacated, wrongful convictions. Defendant Morrissey is sued in his official capacity for declaratory and injunctive relief and in his individual capacity for compensatory damages. Defendant Morrissey also supervises other persons who participated in the unlawful withholding of money and property from Class Members and has

13

established and maintains a policy and practice of not returning money and property unlawfully withheld from Class Members.

28.   Defendant Michael D. O'Keefe, Cape and Islands District Attorney, is presently, and was at all relevant times, a resident of the Commonwealth of Massachusetts. In his official capacity, O'Keefe exercises authority over and has responsibility for money paid and property forfeited by Class Members, directly or indirectly, to the Cape and Islands District Attorney's Office, and in his individual capacity, O'Keefe has participated in the unlawful withholding of money and property from the Class Members by failing to refund all Case-Related Payments, to pay for all Uncompensated Labor, and to return all Forfeited Property that the Cape and Islands District Attorney's Office has obtained from Class Members as a result of their now-vacated, wrongful convictions. Defendant O'Keefe is sued in his official capacity for declaratory and injunctive relief and in his individual capacity for compensatory damages. Defendant O'Keefe also supervises other persons who participated in the unlawful withholding of money and property from Class Members and has established and maintains a policy and practice of not returning money and property unlawfully withheld from Class Members.

29.   Defendant Thomas M. Quinn III, Bristol County District Attorney, is presently, and was at all relevant times, a resident of the Commonwealth of Massachusetts. In his official capacity, Quinn exercises authority over and has responsibility for money paid and property forfeited by Class Members, directly or indirectly, to the Bristol County District Attorney's Office, and in his individual

14

capacity, Quinn has participated in the unlawful withholding of money and property from the Class Members by failing to refund all Case-Related Payments, to pay for all Uncompensated Labor, and to return all Forfeited Property that the Bristol County District Attorney's Office has obtained from Class Members as a result of their now-vacated, wrongful convictions. Defendant Quinn is sued in his official capacity for declaratory and injunctive relief and in his individual capacity for compensatory damages. Defendant Quinn also supervises other persons who participated in the unlawful withholding of money and property from Class Members and has established and maintains a policy and practice of not returning money and property unlawfully withheld from Class Members.

30.     Defendant Marian T. Ryan, Middlesex District Attorney, is presently, and was at all relevant times, a resident of the Commonwealth of Massachusetts. In her official capacity, Ryan exercises authority over and has responsibility for money paid and property forfeited by Class Members, directly or indirectly, to the Middlesex District Attorney's Office, and in her individual capacity, Ryan has participated in the unlawful withholding of money and property from the Class Members by failing to refund all Case-Related Payments, to pay for all Uncompensated Labor, and to return all Forfeited Property that the Middlesex District Attorney's Office has obtained from Class Members as a result of their now-vacated, wrongful convictions. Defendant Ryan is sued in her official capacity for declaratory and injunctive relief and in her individual capacity for compensatory damages. Defendant Ryan also supervises other persons who participated in the unlawful withholding of money and

property from Class Members and has established and maintains a policy and practice of not returning money and property unlawfully withheld from Class Members.

31.    At all relevant times, Defendants have acted, and continue to act, under the color of state law.

## Facts

### Class Members Were Wrongfully Convicted of State Drug Offenses

32.    From November 2003 through March 2012, former state employee Annie Dookhan worked as a chemist in the William A. Hinton State Laboratory Institute ("Hinton Drug Lab").

33.    In June 2011, supervisors in the Hinton Drug Lab discovered that Dookhan had violated numerous lab policies and protocols. Based on internal investigation by the Department of Public Health, in February 2012, Dookhan was placed on administrative leave, and in March 2012, she resigned from the lab.

34.    Following further investigation by the Massachusetts State Police, investigators determined that Dookhan had fabricated test results (including by "dry labbing" and "turning negative samples into positive samples"), mishandled evidence, forged lab documents, and perjured herself in testimony against Class Members.

35.    On September 28, 2012, the Massachusetts State Police arrested Dookhan, and the Attorney General's Office announced that it would prosecute her.

36.    On December 17, 2012, a state-wide grand jury returned indictments against Dookhan charging her with, among other offenses, tampering with evidence, obstruction of justice, and perjury.

16

37.    On November 22, 2013, Dookhan pleaded guilty, and the Superior Court sentenced her to three to five years in prison and two years of probation.

38.    During Dookhan's tenure in the Hinton Drug Lab, Class Members were convicted, by guilty pleas, based on admissions to sufficient facts, or following trials, of one or more state drug offenses in violation of M.G.L. c. 94C, and in all their criminal cases, Dookhan signed the certificates of drug analysis as either the primary or secondary chemist.

39.    As the Supreme Judicial Court later recognized, in *Commonwealth v. Scott*, 467 Mass. 336, 348 (2014), the certificates that Dookhan signed were "central" to the prosecutions of Class Members, and Dookhan's misconduct concerning those certificates "undermined the very foundation[s]" of those prosecutions.

40.    Thus, the Supreme Judicial Court held that every Class Members (i.e., every defendant who was convicted of a state drug offense in a case in which Dookhan signed the drug certificate) was "entitled to a conclusive presumption that egregious government misconduct occurred in the defendant's case":

> This insidious form of misconduct [by Dookhan], which belies reconstruction, is a lapse of systemic magnitude in the criminal justice system. . . . We must account for the due process rights of defendants, the integrity of the criminal justice system, the efficient administration of justice in responding to such potentially broad-ranging misconduct, and the myriad public interests at stake. Moreover, in the wake of government misconduct that has cast a shadow over the entire criminal justice system, it is most appropriate that the benefit of our remedy inure to defendants.

*Id.* at 545 (citing *Lavallee v. Justices in the Hampden Superior Court*, 442 Mass. 228, 246 (2005)).

17

<u>As a Result of Their State Drug Convictions,</u>
<u>Class Members Made Case-Related Payments,</u>
<u>Performed Uncompensated Labor, and Forfeited Property</u>

41.     Case-Related Payments, Uncompensated Labor, and Forfeited Property

were extracted from Class Members as a result of their criminal charges and

convictions.

42.     In his 2015 address on the "State of the Judiciary," Chief Justice Ralph

D. Gants, of the Supreme Judicial Court, addressed "the various fees that we impose

on criminal defendants":

> Indigent counsel fee: $150. Probation supervision fee: $780
> for one year of supervised probation and $600 per year for
> administrative probation. Victim-witness fee: $90 for a
> felony, $50 for a misdemeanor. For an indigent defendant
> convicted of one felony and sentenced to one year of
> supervised probation, the fees total $1,020, more if a GPS
> bracelet is a condition of probation, because the defendant
> is required to pay for that, too. A judge may waive payment
> where the judge finds it would cause undue hardship, but
> judges must then require community service in lieu of
> payment, and the probation department must find the
> defendant an appropriate community service opportunity.
>
> I know that Massachusetts is not unique in the imposition
> of these fees. At least 44 states impose a probation
> supervision fee; at least 43 impose an indigent counsel fee.
> I also know that the revenue yielded by these fees in
> Massachusetts is not insubstantial: $21 million in
> probation supervision fees; $7 million in indigent counsel
> fees; about $2.4 million in victim-witness fees, in all more
> than $30 million per year.
>
> But should we not stop and ask: who are we asking to pay
> these fees? Most are dead broke, or nearly broke.
> Approximately 75 percent of criminal defendants are
> indigent. Collection is difficult, and we are asking
> probation officers to take charge of this collection, and to
> allege a violation of probation where a defendant fails to
> pay. And the law requires yet another payment of a $50 fee

18

> when a default warrant is issued because of a defendant's
> failure to pay.

Hon. Ralph D. Gants, "State of the Judiciary," (Oct 20, 2015) at 9-10.

43.     Similarly, in a Senate Committee Report on the "byzantine structure of criminal fines, fees, and assessments" in the Massachusetts criminal justice system, legislators observed that, "as he [or she] moves through the Massachusetts courts, a criminal defendant runs a gauntlet of financial risk":

> [The defendant will] incur a fee for court-appointed counsel (even if he's indigent), a fine (if he's guilty of the underlying crime), a victim/witness assessment (even if the crime is victimless), a monthly supervision fee (if he's put on probation), a daily monitoring fee (if he has to wear a GPS device), court costs (because courts are expensive to run), a default fee (if he defaults on a court date), and so on.

Senate Rpt. No. 2504, "Fine Time: Massachusetts: Judges, Poor People, and Debtors' Prison in the 21st Century," (Nov. 7, 2016) at 10.

44.     As a result of their criminal cases, Class Members were forced to run this financial "gauntlet," and they paid some or all the following fees, costs, and/or assessments:

a.     Any adult convicted of a felony or against whom a finding of sufficient facts for a felony conviction is made must pay a victim-witness fee of $90, *see* M.G.L. c. 258B, § 8;

b.     Any adult convicted of a misdemeanor or against whom a finding of sufficient facts for a misdemeanor conviction is made must pay a victim-witness fee of $50, *see* M.G.L. c. 258B, § 8;

19

c.      Any juvenile over the age of fourteen who is adjudicated a delinquent child or against whom a finding of sufficient facts for a finding of delinquency is made must pay a victim-witness fee of $45, *see* M.G.L. c. 258B, § 8;

d.      Any person placed on supervised probation must pay a monthly probation supervision fee of $60 per month as well as a victim-services surcharge of $5 per month; in cases where the payment of this fee would constitute an undue hardship, said person may be required to perform unpaid community service work for not less than one day per month, *see* M.G.L. c. 276, § 87A;

e.      Any person placed on administrative probation must pay a monthly administrative probation fee of $45 per month as well as a victim services surcharge of $5 per month; in cases where the payment of this fee would constitute an undue hardship, said person may be required to perform unpaid community service work for not less than four hours per month, *see* M.G.L. c. 276, § 87A; any person placed on probation may be ordered, as a term of probation, to pay the reasonable and actual expenses of the prosecution, *see* M.G.L. c. 280, § 6;

f.      As of 2003, any person placed on parole was required to pay a monthly parole supervision fee of $50 per month as well as a victim-services surcharge of $5 per month, *see* Section 368 of Chapter 26 of the

Acts of 2003, and in 2006, the supervision fee was increased to $75 per month, *see* Section 10 of Chapter 303 of the Acts of 2006;

g.      Any convicted felon or youthful offender must pay a DNA collection fee of $110, *see* M.G.L. c. 22E, §§ 3 & 4(b); *DOE 10800 v. Sex Offender Registry Bd.*, 459 Mass. 603, 615-16 (2011);

h.      When the court appoints counsel, an indigent criminal defendant must make contribution of $150 to the cost of that representation, *see* M.G.L. c. 211D, § 2A(f), and a person who is unable to pay these fees may be ordered to perform unpaid community service for a credit of $10 per hour, *see, e.g.*, M.G.L. c. 211D, § 2A(g); and

i.      An indigent defendant who fails to pay any assessed fee or fine must pay another fee of $50 to recall a default warrant, *see* MG.L. c. 276, § 30, ¶ 1, or $75 if the default warrant for non-payment results in an arrest, *see* M.G.L. c. 276, § 30, ¶ 2.

45.     Because they were convicted of state drug offenses in particular (as opposed to other types of offenses), Class Members were also forced to pay some or all the following fees, costs, and/or assessments:

a.      Any person convicted of a state drug offense in violation of Chapter 94C is subject to a fine of up to $25,000, depending on the type and quantity of drugs and whether the conviction involves a first-time or subsequent offense, *see* M.G.L. c. 94C, §§ 32(a), 32A(a) & 34;

b.      Before imposing such a fine as punishment for a state drug offense, a sentencing judge must "levy as a special cost assessment an amount equal to twenty-five per cent of the fine." M.G.L. c. 280, § 6A;

c.      In addition, any person who is found guilty, or admits sufficient facts for a guilty finding, of distributing a controlled substance, possessing heroin as a second offense, or being present where heroin is kept, must be charged a "criminal assessment," from $35 to $500, *see* M.G.L. c. 280, § 6B; and

d.      From 1989 to 2016, any person convicted of any state drug offense faced the automatic suspension of his or her driver's license for up to five years, *see* M.G.L. c. 90, § 22(f), *deleted by* 2016, 64, Sec. 1 (Mar. 30, 2016), and reinstatement required the person to pay of a minimum fee of $500.

46.     Upon information and belief, many of the Case-Related Payments extracted from Class Members as a result of their criminal cases were deposited into the Commonwealth's General Fund. On information and belief, exceptions included DNA fees which were distributed to the Massachusetts State Police, *see* M.G.L. c. 22E, § 4(b); the reasonable and actual expenses of prosecutions which were distributed to the District Attorney's Office (or Attorney General's Office) that incurred those expenses, *see* M.G.L. c. 280, § 6; and the default warrant arrest fees which were distributed to "the city or town in which such arrest was effected," M.G.L. c. 276, § 30, ¶ 2.

47.    In addition, as a result of their drug convictions, Class Members forfeited some or all of the following valuable property:

a.    "Moneys" that were deemed to have been "furnished or intended to be furnished by any person in exchange for a controlled substance." M.G.L. c. 94C, §§ 47(a)(5);

b.    Alleged "proceeds" that were deemed "traceable to such an exchange, . . .  shall, upon motion of the attorney general or district attorney, be declared forfeit by any court having jurisdiction over said property or having final jurisdiction over any related criminal proceeding." M.G.L. c. 94C, §§ 47(b); and

c.    Other valuable property, such as cellphones, cars, and other tangible property.

48.    On information and belief, Forfeited Property extracted from Class Members was "distributed equally between the prosecuting district attorney or attorney general and the city, town or state police department involved in the seizure," and "[i]f more than one department was substantially involved in the seizure, the court having jurisdiction over the forfeiture proceeding shall distribute the fifty percent equitably among these departments." M.G.L. c. 94C, 47(d); *Dist. Att'y for the Northwestern Dist. v. Eastern Hampshire Div. of the Dist. Court Dep't*, 452 Mass. 199 (2008).

49.    On information and belief, as a result of their drug convictions and their inability to make required Case-Related Payments, Class Members were required to

perform, and in fact performed, community service and other labor for which they did not receive fair compensation.

The SJC Has Since Vacated and Dismissed with Prejudice
the Wrongful Convictions of All Class Members

50.    On January 9, 2014, three wrongfully convicted individuals brought a petition, pursuant to M.G.L. c. 211, § 3, alleging that the egregious government misconduct that occurred, for nearly a decade, at the Hinton Drug Lab had violated their rights to due process and, on that basis, asking the Supreme Judicial Court to vacate and dismiss with prejudice their tainted drug convictions.

51.    Defendant District Attorneys opposed that relief, asserting that many Class Members did not care to challenge their wrongful convictions (because they had moved on with their lives), and suggesting that the criminal justice system could adequately consider any motions for post-conviction relief on a case-by-case basis.

52.    Nevertheless, after nearly four years of litigation concerning the Hinton Drug Lab scandal, the Supreme Judicial Court ordered, in *Bridgeman v. District Attorney for the Suffolk District*, 476 Mass. 298 (2017), that seven District Attorneys—all Defendants, here—must "exercise their prosecutorial discretion and reduce the number of relevant Dookhan defendants by moving to vacate and dismiss with prejudice all drug cases the district attorneys would not or could not reprosecute if a new trial were ordered."

53.    In response, on April 18, 2017, Defendant District Attorneys sent letters to the Supreme Judicial Court identifying those cases in which, based on

24

individualized reviews, the District Attorneys moved to vacate and to dismiss with prejudice all convictions for state drug offenses.

54.    On the next day, the Single Justice of the Supreme Judicial Court issued an order officially vacating and dismissing with prejudice all 21,587 drug cases that the District Attorneys had identified.

<u>Defendants Have Violated, and Continue to Violate, Due Process<br>by Failing to Refund Money, to Pay for Uncompensated Labor,<br>and to Return Property to Class Members</u>

55.    On the same day that the Supreme Judicial Court issued its order vacating the wrongful convictions of Class Members, and dismissing with prejudice the criminal charges against them, the Supreme Court held, in *Nelson v. Colorado*, 137 S. Ct. 1247 (2017), that "[w]hen a criminal conviction is invalidated by a reviewing court and no retrial will occur, . . . the State [is] obliged to refund fees, court costs, and restitution exacted from the defendant upon, and as a consequence of, the conviction."

56.    Since *Nelson* was decided, Defendants have failed to notify the 21,587 individuals whose state drug convictions have been vacated and dismissed with prejudice—all Class Members, here—of their due process rights to the refund of all Case-Related Payments, payment for all Uncompensated Labor, and the return of all Forfeited Property that has been extracted from them as a result of their now-vacated, wrongful convictions.

57.    Further, Defendants have failed to establish—and on information and belief, they have no intent or plan to establish—an efficient, effective, and fair process

by which to refund all Case-Related Payments, pay for all Uncompensated Labor, and return all Forfeited Property to Class Members.

58.    Upon information and belief, Defendant District Attorneys have opposed motions by Class Members, in individual cases, for the refund of payments and return of property, and Defendant District Attorneys have sought reconsideration of orders by trial judges in favor of Class Members.

59.    Upon information and belief, Defendants have failed to return all Case-Related Payments, to pay for all Uncompensated Labor, and to return all Forfeited Property to Class Members; instead, in violation of due process, Defendants have unlawfully withheld, and continue to withhold, the money and property that was extracted from Class Members as a result of their now-vacated, Dookhan-involved convictions.

<u>There Is No Adequate Process Under Massachusetts Law<br>to Ensure Defendants Do Not Continue to Wrongfully Withhold<br>Money and Property Due to Class Members</u>

60.    Under Massachusetts law, "[n]o prisoner or person under recognizance, acquitted by verdict or discharged because no indictment has been found against him, or for want of prosecution, shall be liable for any costs or fees." M.G.L. c. 278, § 14.

61.    Because the criminal charges against Class Members have been dismissed with "no prospect of reprosecution," Defendants have no interest in withholding Case-Related Payments and Forfeited Property from Class Members, and Defendants have "zero claim of right" to any of that money and/or property. *Nelson*, 137 S. Ct. at 1255, 1257.

62.     Nevertheless, there is no adequate process under Massachusetts law that ensures Class Members, who have been exonerated of the drug offenses at issue, receive refunds of Case-Related Payments that they made, payments for all Uncompensated Labor that they performed, and returns of Forfeited Property that they lost, based on their now-vacated, wrongful convictions. Rather, on information and belief, Defendants continue to wrongfully withhold Case-Related Payments, payment for Uncompensated Labor, and Forfeited Property that is due, owing, and belongs to Class Members.

63.     The Commonwealth's exoneration act does not provide adequate process for Class Members to obtain relief, for several reasons:  it only applies to persons who have been convicted of felonies resulting in incarceration; requires proof, by clear and convincing evidence, of actual innocence; and provides no process for the refund of fees, costs and other assessment that wrongfully convicted persons have paid or the return of property that such persons have forfeited. *See* M.G.L. c. 258D, § 1.

64.     Although statutes provide for the refund of the "criminal assessment" when a drug distribution conviction is "overturned on appeal," M.G.L. c. 280, § 6B, and the "victim-witness fee" when a conviction (or adjudication of delinquency) has been "overturned on appeal," M.G.L. c. 258B, § 8, the Supreme Judicial Court has narrowly construed those provisions. *See Commonwealth v. Martin*, 476 Mass. 72 (2016). As a result, Class Members have no statutory rights under state law to refunds of "criminal assessments" or "victim-witness assessments," where as in this case, they obtained post-conviction relief based on egregious government misconduct

27

that tainted the evidence in their cases. Similarly, Class Members have no statutory rights under state law to the return of probation fees that they paid. *Id.*

65. Although Class Members may file an application in the Superior Court seeking the removal of their DNA sample from the database, *see* M.G.L. c. 22E, § 15, there is no process for them to petition for the return of the DNA fees that they paid.

## Class Allegations

66. Pursuant to Rule 23(a) and (b)(2) of the Federal Rules of Civil Procedure, Plaintiffs seek to represent a certified class defined as follows:

> all persons (a) who were convicted of state drug offenses; (b) who made any Case-Related Payments, performed any Uncompensated Labor, and/or lost any Forfeited Property as a result of those convictions; (c) whose convictions have since been vacated and dismissed with prejudice by the Supreme Judicial Court due to the egregious prosecutorial misconduct of former state chemist Annie Dookhan in the Hinton Drug Lab; but (d) to whom Defendants have not refunded all Case-Related Payments, paid for all Uncompensated Labor, and returned all Forfeited Property.

Plaintiffs reserve the right to amend this definition if further investigation and discovery indicates that it should be narrowed, expanded, or otherwise modified.

67. Joinder is impracticable because there approximately 21,587 Class Members, and they are geographically diverse, and their cases were prosecuted in seven different counties throughout the Commonwealth.

68. Class Members share common questions of law and fact, including but not limited to whether the Defendants have obligations under the Due Process Clause of the Fourteenth Amendment to the United States Constitution:

a.     To notify Class Members they are entitled to the refund of all Case-Related Payments, payments for all Uncompensated Labor, and return of all Forfeited Property;

b.     To implement an efficient, effective, and fair process to refund all Case-Related Payments, to pay for all Uncompensated Labor, and to return all Forfeited Property to Class Members; and

c.     To refund all Case-Related Payments, to pay for all Uncompensated Labor, and to return all Forfeited Property that was extracted from Class Members based on their now-vacated, wrongful convictions.

A class action is necessary to generate consistent, common answers to these questions, thereby driving the litigation toward an efficient and fair resolution.

69.    By this complaint, Plaintiffs advance claims that are typical of all Class Members, because like all other similarly situated individuals, Plaintiffs are entitled to the refund of all Case-Related Payments that they made and return of all Forfeited Property that they lost as result of their now-vacated, wrongful convictions.

70.    As a result of their now-vacated, wrongful convictions, under the Fourteenth Amendment, Plaintiffs are entitled to the refund of all Case-Related Payments that they made and return of all Forfeited Property that was taken from them.

71.    Rather than notify Plaintiffs of their rights, Defendants have failed to comply with their constitutional obligations, and they continue to wrongfully

withhold money and property to which Defendants currently have "zero claim of right." *Nelson*, 137 S. Ct. at 1257.

72. Defendants have failed to provide an efficient, effective, and fair process for Plaintiffs to receive refunds of all Case-Related Payments, payment for all Uncompensated Labor, and returns of all Forfeited Property. Indeed, Defendants have created no process, and upon information and belief, certain Defendants have opposed efforts by individuals to recover that which was taken from them as a result of their now-vacated, wrongful convictions.

73. Plaintiffs have strong personal interests in the outcome of this action, have no conflict of interest with other Class Members, and will fairly and adequately represent the interests of the Class Members. In supporting their individual claims, Plaintiffs will simultaneously advance the common claims of absent class members.

74. The proposed class should be certified pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure because the Defendants have acted on grounds generally applicable to the class, thereby making class-wide declaratory and injunctive relief appropriate.

75. In addition, to the extent necessary to secure compensatory damages for Class Members, the proposed class should also be certified pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure, because questions of law or fact common to Class Members predominate over any questions affecting individual members, because although individual members may be entitled to refunds and payments in

different amounts and to return of different property, the core issues in this case are the following:

  a.    all Class Members have constitutional rights to refunds of all Case-Related Payments that they have made, to payment for all Uncompensated Labor that they performed, and to return of all Forfeited Property that they have lost;

  b.    by failing to refund all Case-Related Payments, to pay for all Uncompensated Labor, and to return all Forfeited Property to Class Members, Defendants have violated, and continue to violate, the due process rights of all Class Members; and

  c.    Defendants must notify all Class Members of their rights; provide an efficient, effective, and fair process to restore the money and property that was extracted from all Class Members as a result of their non-vacated, wrongful convictions; and refund all Case-Related Payments, pay for all Uncompensated Labor, and return all Forfeited Property to all Class Members.

76.    In addition, the proposed class action is also superior to other available methods for resolving the common claims of all Class Members, because case-by-case adjudication of claims by individual "Dookhan defendants" will not afford relief to or vindicate the due process rights of all Class Members.

77.    Upon information and belief, many Class Members are not aware that they have constitutional rights to refunds of all Case-Related Payments, payment for

Uncompensated Labor, and return of all Forfeited Property; many Class Members lack the means to retain private attorneys to represent them in collateral proceedings or other civil rights litigation; the burden and expense of individual adjudication will prevent many Class Members from vindicating their due process rights, given the amount of Case-Related Payments, fair compensation for Uncompensated Labor, and value of Forfeited Property to which any individual member may be entitled; many Class Members who have suffered the harsh collateral consequences of tainted convictions would decline to pursue post-conviction relief for fear of retaliation and reprisal by prosecutors or other law enforcement officials.

78.     Moreover, individual efforts, in courts or otherwise, on behalf of Class Members would risk inconsistent adjudications and/or adjudications which would, as a practical matter, be dispositive of the interests of absent Class Members were not party to the adjudications.

79.     Plaintiffs' counsel, including counsel involved from the outset in the litigation concerning the scandal arising from Dookhan's misconduct at the Hinton Drug Lab, possesses the resources, expertise, and experience to prosecute this action on behalf of all Class Members.

## COUNT I
### Declaratory Judgment

80.     Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 79 as if fully set forth herein

81.     An actual and substantial controversy exists between Class Members and Defendants about whether Class Members have due process rights to the refund of all Case-Related Payments, the payment for Uncompensated Labor, and the return of all Forfeited Property.

82.     This action is presently justiciable because Defendants have failed to comply with their constitutional obligations to refund of all Case-Related Payments, to pay for Uncompensated Labor, and to return of all Forfeited Property to Class Members; instead, they have unlawfully withheld, and continue to unlawfully withhold, that money and property.

83.     Declaratory relief will clarify the rights and obligations of the Parties, and, therefore, pursuant to 28 U.S.C. § 2201, is appropriate to resolve this controversy.

## COUNT II
### VIOLATION OF THE FOURTEENTH AMENDMENT
### TO THE U.S. CONSTITUTION
### 42 U.S.C. § 1983
(Procedural Due Process)

84.     Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 79 as if fully set forth herein.

85.     The Fourteenth Amendment to the U.S. Constitution provides in relevant part, "nor shall any State deprive any person of life, liberty, or property, without due process of law."

86.     At all relevant times, acting "under the color of state law," Defendants have unlawfully withheld, and continue to unlawfully withhold, Case-Related Payments, payments for Uncompensated Labor, and Forfeited Property from Class

Members, because Defendants serve as state officials who exercise authority over and have responsibility for Case-Related Payments, Uncompensated Labor, and Forfeited Property extracted from Class Members.

87.     Defendants have personally participated in the wrongful withholding of money and property from the Class Members by failing to provide notice to Class Members of their rights to the refund of all Case-Related Payments, the payment for Uncompensated Labor, and the return of all Forfeited Property.

88.     Defendants have also personally participated in the wrongful withholding of money and property from the Class Members by failing to implement an efficient, effective, and fair process to refund all Case-Related Payments, to pay for Uncompensated Labor, and to return of all Forfeited Property to Class Members.

89.     As a result of Defendants' conduct, Class Members have been denied any meaningful opportunity to recover their money and property, and thus, they have been deprived of their rights to procedural due process.

90.     Due to Defendants' violation of due process, Class Members have suffered, and will continue to suffer, irreparable harm and/or actual damages for which they have no adequate remedy under state law.

## COUNT III
## VIOLATION OF THE FOURTEENTH AMENDMENT
## TO THE U.S. CONSTITUTION
### 42 U.S.C. § 1983
(Substantive Due Process)

91.     Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 79 as if fully set forth herein.

92.     The Fourteenth Amendment to the U.S. Constitution provides in relevant part, "nor shall any State deprive any person of life, liberty, or property, without due process of law."

93.     At all relevant times, acting "under the color of state law," Defendants have unlawfully withheld, and continue to unlawfully withhold, Case-Related Payments, payment for Uncompensated Labor, and Forfeited Property from Class Members, because Defendants serve as state officials who exercise authority over and have responsibility for Case-Related Payments, Uncompensated Labor, and Forfeited Property extracted from Class Members.

94.     Defendants have personally participated in the wrongful withholding of money and property from the Class Members by failing to refund all Case-Related Payments, to pay for all Uncompensated Labor, and to return all Forfeited Property to Class Members, despite the clearly established law that Defendants have no interest in withholding that money and property and that they have "zero claim of right."

35

95.     As a result of Defendants' conduct, Class Members have been subjected to unfair and arbitrary state action, and thus, they have been deprived of their substantive rights to due process.

96.     Due to Defendants' violation of due process, Class Members have suffered, and will continue to suffer, irreparable harm and/or actual damages for which they have no adequate remedy under state law.

## COUNT IV
## CONVERSION

97.     Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 79 as if fully set forth herein.

98.     Defendants have exercised, and continue to exercise, dominion and control over Class Members' money and property to which Defendant have "zero claim of right."

99.     Defendants' conduct is wrongful, because Defendants have "zero claim of right" to any Case-Related Payments, the value of an Uncompensated Labor, or any Forfeited Property that were extracted from Class Members as a result of their now-vacated, wrongful convictions, and also because Class Members are entitled to refund of all Case-Related Payments, payment for all Uncompensated Labor, and return of all Forfeited Property.

100.    As a result of Defendants' wrongful conduct, Class Members have suffered, and continue to suffer, damages.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court:

1.      Certify this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, certify Plaintiffs as the representatives of all Class Members, and designated their counsel as counsel for all Class Members;

2.      Award equitable relief for Class Members, pursuant to Rule 23(a) and (b)(2) of the Federal Rules of Civil Procedure, by declaring that Defendants are entitled to the refund of all Case-Related Payments, payment for all Uncompensated Labor, and the return of all Forfeited Property that was extracted from them as a result of their now-vacated, wrongful convictions, and further ordering Defendants as follows:

      a.      To notify Class Members of their rights to the refund of all Case-Related Payments, payment for all Uncompensated Labor, and the return of all Forfeited Property;

      b.      To implement an efficient, effective, and fair process to refund all Case-Related Payments, to pay for all Uncompensated Labor, and to return all Forfeited Property to Class Members;

      c.      To conduct a full accounting of all Case-Related Payments received, Uncompensated Labor performed, and Forfeited Property obtained from Class Members in connection with their criminal cases; and

      d.    To refund all Case-Related Payments, to pay for all Uncompensated Labor, and to return all Forfeited Property to Class Members.

3.    Alternatively, if the refund of Case-Related Payments, payment for all Uncompensated Labor, and/or the return of Forfeited Property is unavailable as equitable relief, award actual damages to Class Members, pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure, in the amount of all Court Payments, the fair value of all Uncompensated Labor, and the fair value of all Forfeited Property that was extracted from Class Members as a result of their criminal cases, and that have been, and continue to be, unlawfully withheld by Defendants, and if available, also award punitive damages to Class Members;

4.    Award reasonable attorneys' fees, pursuant to 42 U.S.C. § 1988;

5.    Award pre- and post-judgment interest on any award of equitable restitution or monetary damages; and

6.    Award other relief that this Court deems just, appropriate, and proper.

## Jury Trial Demand

Plaintiffs request a jury trial on all causes of action so triable.

Respectfully Submitted,

*/s/ Luke Ryan*

LUKE RYAN, BBO#664999
Sasson, Turnbull, Ryan & Hoose
100 Main Street, Third Floor
Northampton, MA  01060
(413) 586-4800
lryan@strhlaw.com

DANIEL N. MARX, BBO#674523
WILLIAM W. FICK, BBO#650562
Fick & Marx LLP
100 Franklin Street, 7th Floor
Boston, MA  02110
(857) 321-8360
dmarx@fickmarx.com
wfick@fickmarx.com

Dated: February 23, 2018