UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| Jennifer COTTO, David CUMMINGS, Jamie KIMBALL, Todd MOTON, and Travis MORAN on behalf of themselves and all others similarly situated, | * * * * * | |
| Plaintiffs, | * * | |
| v. | * * | |
| Andrea Joy CAMPBELL, Massachusetts Attorney General; Timothy SHUGRUE, Berkshire County District Attorney; Thomas M. QUINN, III, Bristol County District Attorney; Robert GALIBOS, Cape and Islands District Attorney; Jonathan BLODGETT, Essex County District Attorney; Anthony GULLUNI, Hampden County District Attorney; Marian RYAN, Middlesex County District Attorney; Michael W. MORRISSEY, Norfolk County District Attorney; David E. SULLIVAN, Northwestern District Attorney; Timothy J. CRUZ, Plymouth County District Attorney; Kevin R. HAYDEN, Suffolk County District Attorney; Joseph D. EARLY, JR., Worcester County District Attorney; John A. BELLO, Administrator of the Trial Court; Christopher MASON, Massachusetts State Police Superintendent; SPRINGFIELD POLICE DEPARTMENT; BOSTON POLICE DEPARTMENT; BROCKTON POLICE DEPARTMENT; and FALL RIVER POLICE DEPARTMENT, on behalf of themselves and all others similarly situated, | * * * * * * * * * * * * * * * * * * * * * * * * * | Civil Action No. 1:18-cv-10354-IT |
| Defendants. | * * | |

MEMORANDUM & ORDER

November 13, 2023

TALWANI, D.J.

Plaintiffs are five individuals whose Massachusetts drug convictions have been vacated and dismissed but whose forfeited property has not been returned to them. They bring this putative class action on their own behalf and on behalf of all others similarly situated against various Massachusetts state officials and municipal police departments. Invoking the Fourteenth and Eighth Amendments to the U.S. Constitution and state statutory and common law, Plaintiffs seek the restoration of the forfeited property. Pending before the court are Defendants' Motions to Dismiss [Doc. Nos. 109, 114, 115, 118, 120] asserting, inter alia, that Plaintiffs' claims are barred by sovereign immunity, various abstention doctrines, and the statute of limitations.

I.      **Background**

A.   *The Supreme Judicial Court's Decisions Vacating Drug Convictions*

For a period of years beginning in the mid-2000s, two state forensic chemists, Annie Dookhan and Sonja Farak, tampered with evidence, falsified drug test results, and committed perjury—with repercussions for tens of thousands of defendants charged with drug-related offenses. On April 19, 2017, the Single Justice of the Massachusetts Supreme Judicial Court ("SJC") vacated and dismissed with prejudice 21,587 drug cases that had been tainted by Dookhan's misconduct. Bridgeman v. District Attorney for Suffolk County, SJ-2014-0005 (Apr. 19, 2017). On June 18, 2018, the Single Justice of the SJC vacated and dismissed with prejudice over 7,500 drug cases that had been tainted by Farak's misconduct. Committee for Public Counsel Services v. Attorney General of Massachusetts, SJ-2017-347 (June 18, 2018). On October 11, 2018, the SJC held that the convictions of "all defendants who pleaded guilty to a drug charge, admitted to sufficient facts on a drug charge, or were found guilty of a drug charge, where (i) Farak signed the certificate of analysis; (ii) the conviction was based on methamphetamine and the drugs were tested during Farak's tenure at the Amherst lab; or (iii) the

drugs were tested at the Amherst lab on or after January 1, 2009, and through January 18, 2013, regardless of who signed the certificate of analysis" were vacated and dismissed with prejudice. Comm. for Pub. Counsel Servs. v. Attorney Gen., 480 Mass. 700, 734-735, 108 N.E.3d 966 (Mass. 2018).

On March 20, 2019, the Single Justice of the SJC vacated and dismissed with prejudice an additional 7,500-plus cases tainted by Farak's misconduct. Committee for Public Counsel Services v. Attorney General of Massachusetts, SJ-2017-347 (Mar. 20, 2019).

B. *Commonwealth v. Martinez*

On October 30, 2018, in a case brought by two individuals whose criminal convictions had been invalidated, the SJC concluded that the due process clause of the Fourteenth Amendment required the repayment of appellants' probation fees, victim-witness assessments, restitution, fines, and court costs. Commonwealth v. Martinez, 480 Mass. 777, 779, 109 N.E.2d 459 (Mass. 2018). One appellant also sought the return of her civilly forfeited assets, arguing that the forfeiture order against her was "for all practical purposes, [] a consequence of the invalidated drug convictions" and should therefore also be invalidated as a matter of due process. Id. at 791. The SJC disagreed, citing the provision in the Massachusetts Controlled Substances Act ("State Act"), Mass. Gen. Laws Ann. ch. 94C, § 47 (West 2018), for a civil in rem forfeiture proceeding, which is subject to a different burden of proof than the criminal proceeding. As a result of that distinction, the SJC held that the appellant was not entitled to the automatic return of her forfeited assets because "[t]he finding of probable cause of nexus that sufficed to order forfeiture in the civil proceeding did not depend on the finding in the criminal proceeding of sufficient evidence to warrant a finding of guilt on the plea." Martinez, 480 Mass. at 791. However, the SJC also noted that "the reasons for invalidating a conviction potentially may

warrant relief from [a] civil judgment of forfeiture"—but that the "issue must be separately litigated in the civil forfeiture proceeding through a motion for relief from judgment [under Rule 60(b)]." Id. at 791-792. The SJC did not address whether or to what extent the Rule 60(b) procedure should be modified to provide appropriate due process protections for individuals whose convictions had been invalidated.

C. *The State Act*

The State Act authorizes the forfeiture of, inter alia, money and/or property related to a wide range of drug offenses. M.G.L. ch. 94C, § 47(a)(3), (5). A forfeiture proceeding can be brought either (a) through a civil in rem action filed in Superior Court, M.G.L. ch. 94C, § 47(d), or (b) by motion in a related criminal case in District or Superior Court, M.G.L. ch. 94C, § 47(b).

Under the State Act, the prosecution must demonstrate probable cause to institute a forfeiture action. M.G.L. ch. 94C, § 47(d). Once probable cause has been established, the defendant has the burden to demonstrate that the property is not forfeitable, id., i.e. was not "used or intended to be used" to commit or facilitate one of the enumerated drug-related crimes. See M.G.L. ch. 94C, § 47(a)(3), (5), (7). Forfeited assets, or the proceeds of the sale of those assets, are divided between the prosecuting District Attorneys (or Attorney General) and the participating police departments. M.G.L. ch. 94C, § 47(d).

D. *The Initial Complaint*

In 2018, Plaintiff Kimball and several others[1] sued the Commonwealth of Massachusetts and various state and local officials. Complaint [Doc. No. 1]; First Amended Class Action Complaint [Doc. No. 27]. With the consent of all parties, the case was stayed from January 31,

---

[1] Plaintiffs Stacy Foster, Jonathan Riley, and Nicole Westcott have since been terminated from this action.

2019, through October 11, 2022, to permit the resolution of certain matters in state court and by settlement. Order Allowing Joint Motion to Stay Proceedings [Doc. No. 39]; Order Lifting Stay [Doc. No. 77].

E.    *The Second Amended Complaint*

On February 3, 2023, Plaintiffs filed the operative <u>Second Amended Class Action Complaint</u> [Doc. No. 86] on their own behalf and on behalf of all others similarly situated.

1.    Plaintiffs

a.    Plaintiff Jennifer Cotto

On or about April 1, 2008, Springfield police officers arrested Cotto and seized $518 cash from her possession. Am. Compl. ¶ 19 [Doc. No. 86]. On January 27, 2009, in Springfield District Court, Cotto admitted [that] there were sufficient facts to find her guilty of possessing a Class B substance with the intent to distribute. <u>Id.</u> The court entered a continuance without a finding and sentenced her to one year of probation. <u>Id.</u> On the day of Cotto's plea, the prosecutor filed a motion in the criminal case to forfeit the $518 that had been seized upon her arrest. <u>Id.</u> As part of her plea agreement, Cotto did not contest the forfeiture order. <u>Id.</u> The court allowed the forfeiture, and the $518 was split between the Hampden County District Attorney's Office and the Springfield Police Department. <u>Id.</u> On December 13, 2018, due to Farak's misconduct, the SJC vacated the disposition in Cotto's criminal case. <u>Id.</u> Plaintiffs contend that in light of such misconduct, the Commonwealth does not have reliable evidence that Cotto possessed a Class B substance. <u>Id.</u> Cotto's forfeited property has not been returned to her. <u>Id.</u>

b.    Plaintiff David Cummings

On or about January 22, 2010, Marshfield police officers arrested Cummings and seized $14,189 in cash from his residence. <u>Id.</u> ¶ 20. On December 2, 2010, in Plymouth District Court,

Cummings admitted there were sufficient facts to find him guilty of possessing a Class B substance with the intent to distribute. Id. As part of Cummings' plea agreement, both parties recommended forfeiture of the $14,189. Id. The court adopted the recommendation, entered a continuance without a finding, sentenced Cummings to two years of probation, and ordered that Cummings forfeit the $14,189 as a special condition of his probation. Id. The money was divided between the Plymouth County District Attorney's Office and the Marshfield Police Department. Id. On April 19, 2017, due to Dookhan's misconduct, the SJC vacated the disposition in Cummings's case. Id. Plaintiffs contend that in light of such misconduct, the Commonwealth does not have reliable evidence that Cummings possessed a Class B substance. Id. Cummings's forfeited property has not been returned to him. Id.

      c.     Plaintiff Jamie Kimball

On or about December 15, 2009, Lawrence police officers arrested Kimball and seized $2,182 in cash and money orders from her residence. Id. at ¶ 21. On April 27, 2011, in Lawrence District Court, Kimball admitted there were sufficient facts to find her guilty of possessing a Class A substance. Id. Kimball did not contest the civil *in rem* forfeiture action filed by the prosecution in Essex County Superior Court. Id. On June 30, 2010, a default judgement in that action was entered against her. Id. Kimball's forfeited property was divided between the Essex County District Attorney's Office and the Lawrence Police Department. Id. On April 19, 2017, due to Dookhan's misconduct, the SJC vacated the disposition in Kimball's case. Id. Plaintiffs contend that in light of such misconduct, the Commonwealth does not have reliable evidence that Kimball possessed a Class A substance. Id. Kimball's forfeited property has not been returned to her. Id.

      d.      Plaintiff Todd Moton

On or about October 9, 2009, Pittsfield police officers arrested Moton and seized $878 in cash from his possession. <u>Id.</u> at ¶ 22. Moton pleaded guilty to various drug offenses. <u>Id.</u> On the day of his plea, the prosecution filed a motion to forfeit the $878 in cash; as part of his plea agreement, Moton did not contest the forfeiture order. <u>Id.</u> Moton's forfeited property was divided between the Berkshire County District Attorney's Office and the Pittsfield Police Department. <u>Id.</u> On December 13, 2018, due to Farak's misconduct, the SJC vacated Moton's convictions. <u>Id.</u> Plaintiffs contend that in light of such misconduct, the Commonwealth does not have reliable evidence that Moton possessed any controlled substances. <u>Id.</u> Moton's forfeited property has not been returned to him. <u>Id.</u>

      e.      Plaintiff Travis Moran

On or about January 6, 2006, Springfield police officers arrested Moran for various drug offenses and for carrying a firearm without a license. <u>Id.</u> at ¶ 23. At the time of his arrest, Moran was operating a 1994 Honda Accord and possessed $4,528 in cash. <u>Id.</u> On February 3, 2006, the Hampden County District Attorney's Office filed a civil *in rem* action in Hampden County Superior Court against Moran's money and vehicle. <u>Id.</u> On July 31, 2006, Moran pleaded guilty in Hampden County Superior Court to the various drug offenses and to carrying a firearm without a license. <u>Id.</u> On the day of the plea hearing, the prosecution filed a motion in the criminal case to forfeit the $4,528 in cash and the 1994 Honda Accord. <u>Id.</u> As part of his plea agreement, Moran did not contest the motion, which the court allowed. <u>Id.</u> On September 13, 2006, the District Attorney dismissed the in rem action. <u>Id.</u> Moran's forfeited property was divided between the Hampden County District Attorney's Office and the Springfield Police Department. <u>Id.</u> On April 5, 2018, due to Farak's misconduct, the SJC vacated Moran's

convictions. Id. Plaintiffs contend that in light of such misconduct, the Commonwealth does not have reliable evidence that Moton possessed any controlled substances. Id. Moran's forfeited property has not been returned to him. Id.

   2.  Defendants

    a. Commonwealth Defendants

  Plaintiffs have named as Defendants the following state officials in their official capacity: the Massachusetts Attorney General; the Administrator of the Trial Court; the Massachusetts State Police Superintendent; and the District Attorneys for Berkshire, Bristol, Cape and Islands, Essex, Hampden, Middlesex, Norfolk, Northwestern, Plymouth, Suffolk, and Worcester Counties (collectively, the "Commonwealth Defendants").

    b.  Local Government Entities

  Plaintiffs have also named the following local government entities as Defendants: the Springfield Police Department; the Boston Police Department; the Brockton Police Department; and the Fall River Police Department.[2]

   3.  Plaintiffs' Claims

  In light of the invalidation of their convictions, Plaintiffs assert that Defendants are unlawfully continuing to withhold Plaintiffs' forfeited property. Plaintiffs bring claims for Declaratory Judgment (Count I), Fourteenth Amendment violations (Counts II-III), an Eighth Amendment violation (Count IV), and Unjust Enrichment (Count V). Id. at ¶¶ 151-177.[3]

---

[2] Plaintiffs also assert claims against a Defendant Class of law enforcement agencies. Id. at ¶¶ 141-150.

[3] Plaintiffs also allege that the Defendants did not comply with the State Act in carrying out the initial forfeiture actions by, e.g., ordering forfeiture as part of criminal sentences rather than civil in rem proceedings, failing to provide adequate notice, and/or moving for forfeiture in simple possession cases. Id. at ¶¶ 71-72; 81-83; 85-88.

Plaintiffs request injunctive relief in the form of the "return of all Forfeited Property that was taken from them in connection with their vacated, wrongful convictions," as well as notice to all Class Members and accounting of all Forfeited Property. Id. at ¶ 179.

F. *The Pending Motions*

The Commonwealth Defendants filed a Motion to Dismiss [Doc. No. 109], contending that Plaintiffs' claims are barred by sovereign immunity, Younger abstention, the Rooker-Feldman doctrine, Colorado River abstention, the statute of limitations, and Rule 12(b)(6) failure to state a claim. Commw. Mem. MTD [Doc. No. 110]. The Boston Police Department filed a Motion to Dismiss [Doc. No. 114], adopting the Commonwealth Defendants' arguments about Younger abstention, the Rooker-Feldman doctrine, Colorado River abstention, the statute of limitations, and Rule 12(b)(6). It also objected to the certification of a Defendant Class encompassing all police departments in the Commonwealth. Id. at 2. The Springfield Police Department filed a Motion to Dismiss [Doc. No. 118] bringing the same arguments as the Boston Police Department. Springfield Mem. MTD [Doc. No. 119]. The Fall River Police Department filed a Motion to Dismiss [Doc. No. 120] based on failure to state a claim and the statute of limitations. Fall River Mem. MTD [Doc. No. 121]. Finally, the City of Brockton ("Brockton") filed a Motion to Dismiss [Doc. No. 115] claims against the Brockton Police Department, adopting the Commonwealth Defendants' arguments regarding Younger abstention, the Rooker-Feldman doctrine, and the statute of limitations. Brockton Mem. MTD 12-13 [Doc. No. 116]. Brockton also argued that Plaintiffs' claims against the municipal police departments fail to state a Monell claim as required to allege a Section 1983 violation against a local government entity. Id. at 8-12.

Plaintiffs filed an omnibus Opposition [Doc. No. 126] to the five Motions to Dismiss. The Commonwealth Defendants alone filed a Reply [Doc. No. 127].

## II.     Standard of Review

Rule 12(b)(1) is "[t]he proper vehicle for challenging a court's subject matter jurisdiction." Valentin v. Hosp. Bella Vista, 254 F.3d 358, 362 (1st Cir. 2001). Federal courts are courts of limited jurisdiction, so federal jurisdiction is never presumed. Viqueira v. First Bank, 140 F.3d 12, 16 (1st Cir. 1998). The party asserting jurisdiction has the burden of demonstrating the existence of federal jurisdiction. Id. A court should treat all well-pleaded facts as true and provide the plaintiff the benefit of all reasonable inferences. Fothergill v. United States, 566 F.3d 248, 251 (1st Cir. 2009). Dismissal is appropriate only when the facts alleged in the complaint, taken as true, do not support a finding of federal subject matter jurisdiction. Id.

A challenge to the court's subject matter jurisdiction must generally be addressed before addressing the merits of a case. See Acosta-Ramírez v. Banco Popular de Puerto Rico, 712 F.3d 14, 18 (1st Cir. 2013) ("Federal courts are obliged to resolve questions pertaining to subject-matter jurisdiction before addressing the merits of a case"). This is particularly so where a defendant claims sovereign immunity, as the "value to the States of their Eleventh Amendment immunity . . . is for the most part lost as litigation proceeds past motion practice." Puerto Rico Aqueduct & Sewer Auth. V. Metcalf & Eddy, Inc., 506 U.S. 139, 145 (1993).

III.     **Discussion**

A.  *Sovereign Immunity*

The Commonwealth Defendants contend that this action must be dismissed based on sovereign immunity.[4] Sovereign immunity bars suits against the State from proceeding in federal court "unless they consent to it in unequivocal terms or unless Congress, pursuant to a valid exercise of power, unequivocally expresses its intent to abrogate the immunity." Green v. Mansour, 474 U.S. 64, 68 (1985). "The landmark case of Ex parte Young, 209 U.S. 123, created an exception to this general principle by asserting that a suit challenging the constitutionality of a state official's action in enforcing state law is not one against the State." Id. Because the Commonwealth Defendants are all state officials and have been accused of unconstitutional acts, Ex parte Young would, at first blush, seem to apply.

However, the Supreme Court has cabined the scope of Ex parte Young in subsequent cases. First, the Court "ha[s] refused to extend the reasoning of Young . . . to claims for retrospective relief." Green, 474 U.S. at 68; accord Verizon Md., Inc. v. Public Serv. Comm'n of Md., 535 U.S. 635, 645 (2002). This distinction permits "[r]emedies designed to end a continuing violation of federal law" that "are necessary to vindicate the federal interest in assuring the supremacy of that law" to go forward in federal court, Green, 474 U.S. at 68, "while at the same time preserving to an important degree the constitutional immunity of the States" by barring suits that effectively seek damages against the State itself, Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 106 (1984).

---

[4] Although Plaintiffs characterize the Police Departments as "state officials," Pl.'s Oppo 5 [Doc. No. 126], the Police Departments do not assert that they are protected by sovereign immunity.

The Supreme Court has cautioned further that even strict adherence to the "prospective injunctive relief" distinction will not necessarily lead to an outcome that comports with the purposes of sovereign immunity:

> To interpret [Ex parte] Young to permit a federal-court action to proceed in every case where prospective declaratory and injunctive relief is sought against an officer, named in his individual capacity, would be to adhere to an empty formalism and to undermine the principle . . . that Eleventh Amendment immunity represents a real limitation on a federal court's federal-question jurisdiction.

Idaho v. Coeur d'Alene Tribe of Idaho, 521 U.S. 261, 270 (1997).

Second and relatedly, the Supreme Court has declined to extend Ex parte Young to cases where the relief sought, even if equitable in nature, "will to a virtual certainty be paid from state funds, and not from the pockets of the individual state officials who were the defendants in the action." Edelman v. Jordan, 415 U.S. 651, 668 (1974). The Court has explained that even where a "retroactive award of monetary relief" could be described as a "form of 'equitable restitution,' it is in practical effect indistinguishable in many aspects from an award of damages against the State." Id.; see also id. at 668-69 (on a claim seeking "equitable restitution" for return of monies a taxpayer had paid over to the State pursuant to an allegedly unconstitutional tax exaction, the Court "had no hesitation in holding that the taxpayer's action was a suit against the State, and barred by the Eleventh Amendment"); Idaho, 521 U.S. at 277 ("'[W]hen the action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit even though individual officials are nominal defendants.'") (citing Ford Motor Co. v. Dep't of Treasury of Ind., 323 U.S. 459, 464 (1945) (overruled on other grounds)). Thus, in conducting its analysis, the court must rely not only on the distinction between prospective and retroactive relief, but also on the "practical effect" of that relief against the state treasury. See Edelman, 415 U.S. at 668; accord Quern v.

12

Jordan, 440 U.S. 332, 346-47 (1979) (overruled on other grounds) (framing the inquiry as

whether the remedy "constitute[s] permissible prospective relief or a 'retroactive award which

requires the payment of funds from the state treasury'").

As a result of these nebulous distinctions, "the difference between the type of relief

barred by the Eleventh Amendment and that permitted under Ex parte Young will not in many

instances be that between day and night." Edelman, 415 U.S. at 667.

1.  The Ex parte Young exception to sovereign immunity does not apply where the effect
    of the court's order would be an award of monetary relief from the state treasury.

Defendants argue that this lawsuit is barred by Eleventh Amendment sovereign

immunity, because the Commonwealth is the "real, substantial party in interest," Commw. Mem.

MTD 5 [Doc. No. 110], and because Plaintiffs seek "quintessentially retroactive relief," id. at 6.

Further, Defendants argue that the Ex parte Young exception to sovereign immunity does not

apply because "when a plaintiff sues a state official alleging a violation of federal law, the

federal court may award an injunction that governs the official's future conduct, but not one that

awards retroactive monetary relief." Id. (citing Pennhurst, 465 U.S. at 102-103). Defendants rely

heavily on the reasoning in Edelman, see Commw. Mem. MTD 7 [Doc. No. 110], in which the

Supreme Court held that the Eleventh Amendment barred a claim for "equitable restitution" that

would have required state defendants to pay back withheld benefits. 415 U.S. at 666-669.

In response, Plaintiffs do not deny that their requests for the return of their forfeited

property and for restitution would have to be satisfied by the payment of money, and that the

money would come from the State. Instead, they argue that Defendants' failure to return their

forfeited property is a continuing violation of federal law that can be remedied by an order from

the court merely directing the Defendants to comply with the Constitution. Pl.'s Oppo 9-10 [Doc.

No. 126]. As a result, say the Plaintiffs, an order from the court that the withholding of forfeited

property is a constitutional violation would fall within the scope of the Ex parte Young

exception. Id. at 5-6. The Plaintiffs point to Milliken v. Bradley, 433 U.S. 267 (1977), as the

primary support for this argument.

In Milliken, the Supreme Court considered whether a federal court could order a state to

help fund a plan designed to remediate decades of de jure segregation in the Michigan public

school system. 433 U.S. at 270-271. The district court's final order directed the Detroit School

Board and the State to "institute comprehensive programs as to the four educational components

[reading, in-service training, testing, and counseling] by the start of the . . . school term." Id. at

277. The cost of the remedy proposed by the district court—and informed by extensive

consultation with state experts—"was to be equally borne by the Detroit School Board and the

State." Id. The Supreme Court held that the order did not violate the Eleventh Amendment,

drawing a line between the "future costs of educational components" and "award of an accrued

monetary liability." Id. at 289. The Court further explained the distinction:

> The educational components, which the District Court ordered into effect
> prospectively, are plainly designed to wipe out continuing conditions of inequality
> produced by the inherently unequal dual school system long maintained by Detroit.
> These programs were not, and as a practical matter could not be, intended to wipe
> the slate clean by one bold stroke, as could a retroactive award of money.

Id. at 290.

Milliken, however, does not help Plaintiffs here. As a threshold matter, Plaintiffs'

argument that repayment would remedy a continuing wrong rather than a past one is

unpersuasive: This sort of "formal distinction" between Defendants' "continuing obligation" to

remedy their legal violation and their "ongoing liability" for a past injury is "of the sort [the

Supreme Court] rejected" in articulating its retroactive relief test. See Papasan v. Allain, 478

U.S. 265, 280 (1986).

14

Moreover, here—unlike in <u>Milliken</u>—Plaintiffs ask the state for a remedy that is effectively "designed to give [them] back something [they] lost"—the direct repayment of their forfeited assets. <u>See</u> <u>Whalen v. Mass. Trial Court</u>, 397 F.3d 19, 30 (1st Cir. 2005). That is true whether the remedy is styled as an order enjoining Defendants from violating the Constitution by withholding assets, or whether the remedy is styled as an order directing the Defendants to return those assets. Under either order, the Commonwealth could not rectify its constitutional violation, or come into compliance with the law, by any means short of the "return of all Forfeited Property." Thus, to remedy Plaintiffs' claims that the withholding itself is a violation of federal law, this court would have to authorize an "award of an accrued monetary liability," <u>see</u> <u>Milliken</u>, 433 U.S. at 289, that would "to a virtual certainty be paid from state funds," <u>see</u> <u>Edelman</u>, 415 U.S. at 668. That avenue of recourse is barred by the Eleventh Amendment.

Further, Plaintiffs' reliance on First Circuit cases to circumvent sovereign immunity are also inapposite: The cases in which the First Circuit has authorized relief that "required payment of money directly from a state treasury to bring about compliance" involve instances of a state failing to comply with a federal-state assistance program that required the state to make regular payments to beneficiaries on a pre-set schedule. <u>See</u> <u>Coal. for Basic Human Needs v. King</u>, 654 F.2d 838, 842 (1st Cir. 1981) (enjoining states to continue making payments pursuant to the Aid to Families with Dependent Children program established by the federal Social Security Act); <u>Roselli v. Affleck</u>, 508 F.2d 1277 (1st Cir. 1974) (similar). Notably, the First Circuit has not gone so far as to enjoin the state to make payments that were authorized or controlled by state law alone. <u>See</u> <u>Coal. for Basic Human Needs</u>, 654 F.2d at 843 (injunction did not include any directive as to the Massachusetts program of General Relief, which was also at issue in the case).

Because this case is neither about funds nor about a federal-state arrangement, the First Circuit's reasoning is inapplicable here.

      2.      The Commonwealth Defendants are Not Stripped of Sovereign Immunity

      Plaintiffs contend that because they have brought an as-applied challenge to the constitutionality of the State Act, sovereign immunity is no bar to their suit in federal court. Pl.'s Oppo 11 [Doc. No. 126]. More specifically, Plaintiffs argue that Defendants acted *ultra vires* in enforcing the State Act against them, as such enforcement is an unconstitutional violation of their due process rights. Id. But the cases cited by Plaintiffs to support that proposition are inapposite, as they deal with the issue of sovereign immunity as it applies to *federal* officers— not state officers. See Muirhead v. Mecham, 427 F.3d 14, 18 (1st Cir. 2005); Larson v. Domestic & Foreign Commerce Corp., 337 U.S. 682, 686 (1949). Effectively, a challenge to the constitutionality of a state statute as applied by a state official is a contention that the state official violated federal law—the law in question being the Constitution of the United States. And as discussed, those claims are governed by Ex parte Young, which does not include an "ultra vires" exception. Even if this were not the case, Defendants are not acting "without any authority whatsoever" by their current failure to return forfeited assets, see Pl.'s Oppo 11 [Doc. No. 126] (citing Pennhurst, 465 U.S. at 102 n.11), where those assets were seized pursuant to a state statute whose *facial* constitutionality is not in question.[5]

---

[5] Plaintiffs also allege that in some cases, state officials did not lawfully seize the forfeited assets, because they did not adhere to the procedures outlined in the State Act. Pl.'s Oppo 11-12 [Doc. No. 126]. In particular, several of the named Plaintiffs allegedly did not receive the seven days' notice of forfeiture proceedings required by due process. Am. Compl. ¶¶ 19, 22-23 [Doc. No. 86]. Plaintiffs appear to assert that those defects rendered the state officials' actions *ultra vires*. Pl.'s Oppo 11 [Doc. No. 126]. But that a state official's "conduct is contrary to a state statute" is not a basis to find that such conduct is *ultra vires*: That line of reasoning has been foreclosed by the Supreme Court. See Pennhurst, 465 U.S. at 106-107("[a] federal court's grant of relief against state officials on the basis of state law, whether prospective or retroactive, does not

3.      Plaintiffs' Claims for Prospective, Procedural Injunctive Relief Are Not
        Barred by Sovereign Immunity

Where portions of Plaintiffs' requested relief are classic examples of prospective

injunctive relief, the Ex parte Young exception to sovereign immunity does apply. Defendants do

not address these requests for relief head-on, but instead treat them as part of a general category

of "procedural obligations" that "in practice resemble a money judgment payable out of the state

treasury." Commw. Mem. MTD 6 [Doc. No. 110] (quoting Edelman, 415 U.S. at 666). It is true

that Plaintiffs also request administrative and procedural tools to support the return of their

forfeited property, Am. Compl. ¶179(b) [Doc. No. 86]. But it mischaracterizes Plaintiffs' request

to treat all of their requested remedies as effectively tied to the return of their forfeited assets.

Rather, Plaintiffs make a specific request for "a full accounting of all Forfeited Property obtained

from Class Members in connection with their criminal cases." Id. at ¶ 179(c). Compliance with

that request would not entail payment from the state treasury, and it bears no resemblance to a

retroactive award of money damages. Additionally, Plaintiffs request that the court "notify Class

Members of their rights to the return of all Forfeited Property." Id. at ¶ 179(a). As discussed, the

court cannot order, directly or indirectly, the return of forfeited assets. However, to the extent

Plaintiffs' request can be read generally to include notification of their rights to a more robust

state procedure under the State Act, or their rights to pursue relief under Rule 60(b), the court is

permitted to grant such relief. Indeed, that was the crux of the Supreme Court's holding in

Quern, 440 U.S. at 347-48 ("The notice . . . simply apprises plaintiff class members of the

_____

vindicate the supreme authority of federal law. On the contrary, it is difficult to think of a greater
intrusion on state sovereignty than when a federal court instructs state officials on how to
conform their conduct to state law."). As a result, Plaintiffs have failed to allege that procedural
violations related to the forfeiture proceedings (Am. Compl. ¶¶ 71-89, 117, 160 [Doc. No. 86];
Pl.'s Oppo 11 [Doc. No. 126]) rise to the level of *ultra vires* actions, such that sovereign
immunity no longer applies.

existence of whatever administrative procedures may already be available under state law by which they may receive a determination of eligibility for past benefits.").

Similarly, if the court were to order additional procedural due process protections within a Rule 60(b) hearing, it would not change the fact that "whether or not the class member will receive retroactive benefits rests entirely with the State, its agencies, courts, and legislature, not with the federal court." See id. at 348. As a result, the court retains authority to order such relief even if these injunctive remedies might have ancillary effects on the state treasury. See Milliken, 433 U.S. at 289 ("the prospective-compliance exception" to Eleventh Amendment immunity "permits federal courts to enjoin state officials to conform their conduct to requirements of federal law, notwithstanding a direct and substantial impact on the state treasury").

Because Plaintiffs' claims include requests for relief other than an order from this court directing the payment of money from the state, the court is not barred from entertaining Plaintiffs' constitutional challenges for such other relief.

B. *The Statute of Limitations Bars Plaintiffs' Claims Related to Errors in Their Initial Forfeiture Proceedings.*

All Defendants argue that Plaintiffs' claims that their initial forfeiture proceedings were erroneous as a matter of law are time-barred. Comm. Mem. MTD 20 [Doc. No. 110]; Fall River Mem. MTD 3 [Doc. No. 121]; Springfield Mem. MTD 7 [Doc. No. 119]; Boston MTD 1 [Doc. No. 114]; Brockton Mem. MTD 13 [Doc. No. 116]; Commw. Reply 14 [Doc. No. 127]. Plaintiffs respond that their claims relate solely to the unlawful withholding of forfeited property that has occurred and continues to occur since their convictions were vacated, and that the statute of limitations on those claims did not begin to run until 2017. Pl.'s Oppo 26-29 [Doc. No. 126]. The court concludes that claims that the continued withholding of property is unlawful because the convictions have been vacated are not time-barred.

To the extent Plaintiffs also seek to challenge the procedures underlying their original forfeiture proceedings, however, Defendants are correct that Plaintiffs could have raised those challenges at any time after the alleged error occurred. And because the Defendants' continuing alleged violation of federal law (the withholding of their property) does not relate to those initial procedural errors, it does not toll the statute of limitations as to those claims. As a result, the statute of limitations as to those procedural challenges began to accrue at the time of the forfeiture proceedings, not at the time of the SJC's vacatur of the drug convictions. Those challenges are therefore time-barred.

    C.  *Younger Abstention Does Not Apply*

All Defendants also contend that Plaintiffs' claims are barred by Younger abstention. Commw. Mem. MTD 8 [Doc. No. 110]; Fall River Mem. MTD 1 [Doc. No. 121]; Springfield Mem. MTD 3 [Doc. No. 119]; Brockton Mem. MTD 12 [Doc. No. 116]; Boston MTD 1 [Doc. No. 119]. "Younger is a court-made rule of abstention built around the principle that, with limited exceptions, federal courts should refrain from issuing injunctions that interfere with ongoing state-court litigation, or, in some cases, with state administrative proceedings." Maymó-Meléndez v. Álvarez-Ramírez, 364 F.3d 27, 31 (1st Cir. 2004). "[T]he underlying concern is that state proceedings, once begun, should be respected by federal courts so long as the federal claims or defenses can be litigated in the course of those proceedings." Id. at 32. Importantly, "whether federal courts should be able to interfere with ongoing state proceedings is quite distinct and separate from the issue of whether [federal] litigants are entitled to subsequent federal review of state-court dispositions of federal questions." Huffman v. Pursue, Ltd., 420 U.S. 592, 606 (1975). Defendants argue that Plaintiffs are engaged in an "ongoing" civil proceeding, because there is

still some existing state appellate process that could resolve Plaintiffs' claims. See Commw.
Mem. MTD 8-9 [Doc. No. 110]. The court disagrees.

First, the court declines to adopt Defendants' argument that a Rule 60(b) procedure
constitutes an unexhausted state appellate remedy such that Plaintiffs' state forfeiture
proceedings should be considered "ongoing." Defendants are incorrect that a Rule 60(b) motion
is a direct appellate remedy, as contemplated by Huffman, 420 U.S. at 610, rather than a
collateral remedy: The Rule itself expressly states that a motion pursuant to Rule 60(b) "does not
affect [a] judgment's finality or suspend its operation." Defendants' reliance on Sirva Relocation,
LLC v. Richie, 794 F.3d 185 (1st Cir. 2015), see Commw. Mem. MTD 8-9 [Doc. No. 110], to
support their assertion is also misplaced. In that case, the state had "conducted a pre-hearing
conference, and scheduled an adjudicative hearing" that had not yet transpired before the
plaintiffs sued in federal court— actions the First Circuit held "conclusively show[ed] the
existence of an ongoing state proceeding that is judicial in nature." Sirva, 794 F.3d at 196.
Nothing of the sort has occurred here. The state has not begun any procedures related to a Rule
60 hearing, because the Plaintiffs have not initiated that collateral action. Therefore, there are no
ongoing state proceedings into which this court could intervene.

Second, while it is true that Younger abstention bars federal challenges to civil forfeiture
proceedings "before the forfeiture hearing in state court" has occurred, see Loch v. Watkins, 337
F.3d 574, 577 (6th Cir. 2003), or where those proceedings "were pending in state court at the
time" the federal action was initiated, see Postscript Enterprises, Inc. v. Peach, 878 F.2d 1114,
1116 (8th Cir. 1989), that is not the situation here. The civil forfeiture proceedings in which
these Plaintiffs had their assets seized have long since concluded in state court. See Am. Compl.

¶¶ 18-22 [Doc. No. 86] (describing named Plaintiffs' forfeiture proceedings); Pl.'s Oppo 14 [Doc. No. 126].

      D.   *The Rooker-Feldman Doctrine Does Not Apply*

Under the <u>Rooker-Feldman</u> doctrine, "lower federal courts are precluded from exercising appellate jurisdiction over final state-court judgments." <u>Lance v. Dennis</u>, 546 U.S. 459, 463 (2006). The doctrine exists to prevent "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." <u>Exxon Mobil Corp. v. Saudi Basic Indus. Corp.</u>, 544 U.S. 280, 284 (2005).

Defendants contend that <u>Rooker-Feldman</u> applies here, "because [Plaintiffs] seek to have this Court review and overturn thousands of state court judgments." Commw. Mem. MTD 11 [Doc. No. 110]; <u>see</u> Brockton Mem. MTD 12 [Doc. No. 116]; Fall River Mem. MTD 1 [Doc. No. 121]; Springfield Mem. MTD 4-5 [Doc. No. 119]; Boston MTD 1 [Doc. No. 114]. But, as discussed above, Plaintiffs are not seeking this court's direct review of their state court forfeiture proceedings; even if they were, the statute of limitations would bar those claims. Rather, Plaintiffs are challenging the inadequate constitutional protections afforded *after* those proceedings have concluded, where criminal defendants like Plaintiffs have been deemed legally innocent but must nevertheless shoulder a burden of proof in order to return to their pre-conviction status quo. That challenge does not implicate the validity of any original forfeiture proceeding, nor does it require this court to undertake a substantive review of the state court's determination on the issue. <u>See</u> <u>Skinner v. Switzer</u>, 562 U.S. 521, 532 (2011) ("If a federal plaintiff present[s] [an] independent claim, it is not an impediment to the exercise of federal

jurisdiction that the same or a related question was earlier aired between the parties in state court.") (alterations in original) (internal citations omitted).

Defendants also argue that Plaintiffs are seeking this court's review of the SJC's decision in Martinez. Commw. Mem. MTD 12 [Doc. No. 110]. Critically, and fatally to Defendants' position, Plaintiffs were not parties to Martinez, and so they are not "aggrieved litigant[s]" seeking this court's review of a judgment entered against them in state court. See Tyler v. Sup. Jud. Ct. of Mass., 914 F.3d 47, 50 (1st Cir. 2019); accord Johnson v. DeGrandy, 512 U.S. 997, 1006 (1994) (plaintiff "was not a party in the state court" and therefore was "in no position to ask [for] review [of] the state court's judgment").[6] What is more, some of Plaintiffs' constitutional challenges were not before the Martinez court, and so there is no state-court judgment that could possibly bar this court's review on those claims. And even where Plaintiffs' constitutional challenges overlap with those brought in Martinez, this court is not bound by the SJC's conclusions on matters of federal law. As a result, Rooker-Feldman does not apply to Plaintiffs' constitutional challenges where they do not seek direct review of a state-court judgment.

E.  *The Colorado River Doctrine Does Not Apply*

Like the Rooker-Feldman doctrine, application of the Colorado River doctrine may warrant "dismissal of a federal suit due to the presence of a *concurrent state proceeding*." Colo. River Water Conservation Dist. v. United States, 424 U.S. 800, 818 (1976) (emphasis added). But, as discussed, there is no concurrent state proceeding at issue here. As a result, the doctrine does not apply, and the court need not engage in the factor-balancing test the Defendants urge. See Commw. Mem. MTD 13-14 [Doc No. 110].

---

[6] For this reason, Brockton's argument that *res judicata* bars Plaintiffs' suit also fails. Brockton Mem. MTD. 16 [Doc. No. 116]. Plaintiffs have not yet had their opportunity to litigate any of these issues before any court.

F.  *Liability of the Municipal Police Defendants*

Police Departments, as municipal entities, "can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." Monell v. Dep't of Social Servs. of City of N.Y., 436 U.S. 658, 690 (1978). Additionally, municipalities may be sued for "deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." Id. at 691.

The City of Brockton argues that Plaintiffs have failed to allege a Monell violation because the Police Departments are not responsible for enforcing or interpreting the State Act. Brockton Mem. MTD 11 [Doc. No. 116]; see Springfield Mem. MTD 9 [Doc. No. 119] (arguing the same, but in the context of whether the Police Department is a proper class representative). In response, Plaintiffs do not contend that the Police Departments are responsible for interpreting, enforcing, or defending the State Act: rather, they argue that whether the Police Departments were merely "following orders" is irrelevant to whether they are ultimately liable for the return of forfeited property. Pl's Oppo 42 [Doc. No. 126].[7]

The circuits are split on whether a municipal entity can be liable under Section 1983 for complying with the edicts of state law. Compare, e.g. Bethesda Lutheran Homes and Servs., Inc. v. Leean, 154 F.3d 716, 718 (7th Cir. 1998) with Evers v. Cty. of Custer, 745 F.2d 1196, 1203 (9th Cir. 1984). The First Circuit has not yet spoken to the issue. Other sessions in this district have adopted the test laid out by the Second Circuit, see Martin v. Evans, 241 F. Supp. 3d 276,

---

[7] To the extent Plaintiffs' claims against the Police Department Defendants begin and end with a claim for the return of forfeited assets, Plaintiffs concede that claim should be treated as one and the same as their claim seeking that relief against the Commonwealth.

284-85 (D. Mass. 2017), and this court likewise applies the Second Circuit's test here. Under that test, the liability inquiry turns on "(1) whether the City had a meaningful choice as to whether it would enforce [the statute in question]; and (2) if so, whether the City adopted a discrete policy to enforce [the statute in question] that represented a conscious choice by a municipal policymaker." Vives v. City of N.Y., 524 F.3d 346, 353 (2d Cir. 2008). Here, Plaintiffs have not put forth any allegations about the Police Departments' "meaningful choice" under M.G.L. ch. 94C § 47. The language of the State Act indicates that the Departments do not enjoy such discretion:

> All such moneys and proceeds received by any police department *shall be* deposited in a special law enforcement trust fund and *shall be* expended without further appropriation to defray the costs of protracted investigations, to provide additional technical equipment or expertise, to provide matching funds to obtain federal grants, or to accomplish such other law enforcement purposes as the chief of police of such city or town, or the colonel of state police deems appropriate, but such funds *shall not* be considered a source of revenue to meet the operating needs of such department.

M.G.L. ch. 94C § 47(d) (emphases added).

That mandatory statutory language forecloses a Monell claim against the Police Departments regarding the return of the Plaintiffs' civilly forfeited assets. As such, the Plaintiffs have failed to state a claim for relief against the Police Department Defendants.

## IV.    Conclusion

For the foregoing reasons, the Commonwealth Defendants' Motion to Dismiss [Doc No. 109] is GRANTED in part and DENIED in part and the remaining Defendants' Motions to Dismiss [Doc. Nos. 114, 115, 118, 120] are GRANTED.

IT IS SO ORDERED

November 13, 2023                                    /s/      Indira Talwani
                                                     United States District Judge